UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

CHRISTOPHER DAY,                      :

                    Plaintiff,       :    15 Civ. 4399 (GBD)(HBP)

     -against-                       :    REPORT AND
                                          RECOMMENDATION
THE CITY OF NEW YORK, et al.,        :

                    Defendants.      :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge,


I.   Introduction


          Plaintiff Christopher Day brings this action pro se

against the City of New York (the "City"), the New York County

District Attorney's Office ("DANY"), and George Argyros and Nitin

Savur, in both their individual and official capacities, pursuant

to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

et seq. ("Title VII"); 42 U.S.C. § 1983 ("Section 1983"); the New

York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.

("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin.

Code §§ 8-101 et seq. ("NYCHRL"), and various New York common law

tort theories (Complaint, dated June 8, 2015 (Docket Item 1)

("Compl."), ¶¶ 146-76).  By notice of motion dated July 31, 2015

(Docket Item 14), defendants moved for an Order pursuant to

Fed.R.Civ.P. 12(b)(6) dismissing the complaint for failure to

state a claim upon which relief can be granted.  For the reasons

set forth below, I respectfully recommend that defendants' motion

be granted in part and denied in part.

II.  Facts[1]

The complaint, along with the documents attached

thereto, sets forth the following facts.

On June 23, 2014, plaintiff was hired as a temporary

stenographer in DANY's grand jury stenographer unit (Compl. ¶ 7).

As a temporary grand jury stenographer, plaintiff was an employee

of both DANY and the City (Compl. ¶¶ 8-9).

---

[1]The facts are taken from the complaint and the documents
attached thereto, which are assumed to be true for the purposes
of resolving this motion.  Peter F. Gaito Architecture, LLC v.
Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) ("It is well
settled that in ruling on [a motion to dismiss], a district
court may consider the facts as asserted within the four corners of the
complaint together with the documents attached to the complaint
as exhibits, and any documents incorporated in the complaint by
reference." (citations and quotation marks omitted)).  Further,
because "the complaint was filed pro se, it must be construed
liberally 'to raise the strongest arguments [it] suggest[s].'"
Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (citations
omitted; alterations in the original).

During plaintiff's employment, the grand jury stenographer unit included both temporary and permanent stenographers, and consisted of approximately twenty female employees and two male employees, including plaintiff (Compl. ¶¶ 10-13).  According to the complaint, temporary and permanent grand jury stenographers "receive[d] the same benefits, pay raises [and] terms and conditions of employment" (Compl. ¶ 13).  The primary distinction between temporary and permanent grand jury stenographers was that "temporary grand jury stenographers [we]re at-will employees" (Compl. ¶ 13).

The complaint also alleges that "[g]rand jury stenographers frequently joked/discussed/commented on issues of sexual/risqué/political/religious content. . . .  This type of behavior persisted [during plaintiff's employment]" and "was a privilege of employment, revocable at any time by defendants" (Compl. ¶ 19).

A.  Ronit Zohar's Complaint against Plaintiff
     and DANY's Investigation of Zohar's Complaint

On October 7, 2014, Ronit Zohar, a female grand jury stenographer at DANY, made an Equal Employment Opportunity ("EEO") complaint to defendant Argyros, DANY's EEO Coordinator, defendant Savur, DANY's EEO Officer, and two of plaintiff's

3

supervisors, alleging that plaintiff had sexually harassed her by showing her "an internet joke or meme . . . via plaintiff's cellphone on September 30, 2014" (Compl. ¶¶ 34-35).  The complaint provides no further details on the nature of Zohar's complaint or the content of the "internet joke or meme."  On October 17, 2014, defendants informed plaintiff of Zohar's complaint (Compl. ¶¶ 36-39).[2]  Plaintiff alleges that during this conversation, "[d]efendants spoke to [plaintiff] more harshly and in a more accusatory manner because of plaintiff's sex, including but not limited to asking plaintiff if plaintiff was aware that there was an entire unit related to sex crimes and human trafficking" (Compl. ¶ 41).

Defendants investigated Zohar's allegations and, according to plaintiff, found evidence that plaintiff had not violated DANY's EEO policies and that "Zohar complained because plaintiff was male, not because Ronit Zohar's work performance was interfered with or because Ronit Zohar was in an intimidat-

---

[2]The complaint states that "[o]n October 17, 2014, defendants revealed the allegation made by Ronit Zohar . . . to plaintiff" without specifying which of the individual defendants was present at this meeting (Compl. ¶ 39).  Due to plaintiff's pro se status, I construe plaintiff's complaint to allege that both Argyros and Savur communicated this information to plaintiff.

4

ing, hostile, or offensive working environment" (Compl. ¶¶ 42-
44).

On October 29, 2014, plaintiff notified defendants that
he did not believe his actions violated DANY's EEO policy, and
requested that defendants provide him with a copy of the EEO
policy (Compl. ¶ 45).  Defendants never provided plaintiff with
the EEO policy, nor did they explain the EEO policy to him,
despite the fact that they allegedly have a responsibility to do
so (Compl. ¶¶ 46-48).  Defendants also failed to display promi-
nently the DANY EEO policy statement in plaintiff's work area
(Compl. ¶ 64).

On October 30, 2014, defendants informed plaintiff that
they had determined that he had "acted with no malice" towards
Zohar (Compl. ¶ 49).  Defendants did, however, give Zohar "spe-
cial seating and scheduling privileges," which plaintiff alleges
"supported the notion that plaintiff had done something wrong"
(Compl. ¶ 50).  Defendants also urged plaintiff to avoid discuss-
ing Zohar's complaint with his coworkers, but did not give Zohar
a similar instruction (Compl. ¶¶ 53-54).  Plaintiff further
alleges that defendants' handling of the investigation of Zohar's
complaint caused plaintiff's coworkers to "treat [him] differ-
ently than they would have otherwise" and created "an awkward,

uncomfortable environment where plaintiff was assumed to have violated defendants' EEO policies" (Compl. ¶ 51).

Plaintiff complained about defendants' investigation to his supervisor, Linda Riede, telling Riede that he felt as if he was being subjected to a different set of rules than female grand jury stenographers and that he was the only employee "who could [not] joke about whatever [he] wanted to joke about" (Compl. ¶ 59). Riede told plaintiff that "that wasn't right, that the plaintiff shouldn't feel like he has to walk on eggshells, and that the grand jury stenographers [unit] ha[s] had men in the past that joked" (Compl. ¶ 60). Plaintiff alleges that, approximately one week later, "Riede was separated from the investigation" and "[p]laintiff was told he could not discuss EEO matters with . . . Riede" (Compl. ¶ 61).

Plaintiff alleges that defendants violated DANY's EEO policies by separating Riede from the investigation, failing to dismiss Zohar's complaint, failing to convene a conference between plaintiff and Zohar and failing to notify plaintiff and Zohar of their decision to dismiss Zohar's complaint (Compl. ¶¶ 52, 55-57, 61).

B.   <u>Plaintiff's November 2014 Complaint to Defendants</u>

On November 5, 2014, Zohar made several statements
about plaintiff to some of plaintiff's coworkers in which she
called plaintiff "a stalker," stated that plaintiff "had en-
croached on Ronit Zohar's life" and "associated plaintiff's name
with rape culture" (Compl. ¶¶ 66-68).  Plaintiff informed defen-
dants of Zohar's comments on November 7, 2014 and stated that he
believed Zohar's complaint against him may have been made in bad
faith (Compl. ¶¶ 69-71).[3]

According to the complaint, defendants then "gave
plaintiff a special set of rules" (Compl. ¶ 75).  Specifically,
plaintiff alleges that he was told that (1) he should not discuss
relationships, personal finances or religion at work; (2) any
friendships he had with his coworkers ended when he came into
work; (3) he should treat everything he does as if it would end
up in a newspaper; (4) he should act in a manner such that his
actions could never be questioned; (5) office humor can be risky;
(6) he should avoid conversations about Zohar; (7) he should not
retaliate against Zohar and (8) he should be respectful to Zohar

---

[3]Plaintiff again does not identify which of the individual
defendants he spoke with in this conversation; due to plaintiff's
<u>pro</u> <u>se</u> status, I again assume that he had this conversation with
both Savur and Argyros.

(Compl. ¶¶ 75-76, 78-80, 82-87).  Plaintiff was also told that
"one should evaluate the culture of an organization, decide if
they fit in, and if not, move on" (Compl. ¶ 81).  Plaintiff's
female coworkers, including Zohar, were not given these same
guidelines (Compl. ¶¶ 90-91).  Further, although defendants did
meet privately with Zohar following plaintiff's complaint about
her comments, they did not instruct her to treat plaintiff
respectfully notwithstanding the fact that they had previously
instructed plaintiff to treat Zohar respectfully (Compl. ¶¶ 74-
76).

Defendants also offered counseling services to plain-
tiff during this conversation, "suggesting plaintiff see a
psychologist for his own well-being" (Compl. ¶ 89).  Plaintiff
did not utilize the offered counseling services (Compl. ¶ 89).

C.  Plaintiff's Second Complaint of Discrimination

Following plaintiff's November 7, 2014 conversation
with defendants, Zohar continued "to antagonize . . . plaintiff
and create an atmosphere of awkwardness and hostility" (Compl. ¶
94).  On December 19, 2014, plaintiff informed defendants of
Zohar's actions and stated that he was concerned that defendants
were not acting neutrally in their EEO investigations (Compl. ¶¶
96-97).  Plaintiff also told defendants that he felt that he was

being subjected to "a different set of rules from [his] female coworkers, including but not limited to Ronit Zohar," and "did not feel equal to [his] coworkers" (Compl. ¶¶ 98-99).  Defendants informed plaintiff that "despite plaintiff's good-faith belief, one of his complaints regarding a coworker discussing men and politics did not necessarily fall under EEO policies" (Compl. ¶ 101).

Plaintiff further alleges that, during this conversation, "defendants were hostile towards [him], utilizing words like dumb, delusional, you kept your job, oversensitive, and gathering information" (Compl. ¶ 102).  Defendants also again urged plaintiff to utilize the previously offered counseling services, which plaintiff subsequently did, and "insinuated multiple times that something was wrong with plaintiff or plaintiff's perception of reality, [which caused plaintiff] severe mental anguish" (Compl. ¶¶ 111-112).  According to the complaint, defendants never "used such words against any female complainant" (Compl. ¶¶ 103, 113).

Defendants also "offered to conduct a unit training to address plaintiff's concerns" and gave plaintiff the option of taking a few days of paid leave (Compl. ¶ 108).  Plaintiff accepted the paid leave and the offer of unit training; however, no unit training was ever held (Compl. ¶¶ 109, 114).

Finally, plaintiff alleges that defendants violated EEO policies during this December 19, 2014 conversation because they (1) did not "receive [his] EEO complaint" as they had received Zohar's complaint[4] and (2) did not prepare "a written report detailing [plaintiff's] specific allegations of the alleged discriminatory practices" (Compl. ¶¶ 95, 104).

### D.   Plaintiff's Termination

On February 2, 2015, defendants informed plaintiff that he was being terminated from his position and that his last day of work would be February 6, 2015 (Compl. ¶ 117).  Argyros was the "primary decision maker" concerning plaintiff's termination (Compl. ¶ 118).  Plaintiff was told that the reason he was being terminated "was because plaintiff was temporary and just had to be let go" (Compl. ¶¶ 122-23).  However, plaintiff alleges that he "was fired under false pretenses for opposing . . . unlawful employment practices," that there were no issues with his job performance and that there were permanent stenographer positions available he could have filled (Compl. ¶ 125).

---

[4]According to the EEO policies of DANY, which plaintiff attaches as Exhibit 3 to the complaint, EEO Officers and EEO Coordinators "are required to . . . [r]eceive any EEO Complaint that is made by a member of this office" (Compl., Ex. 3, at 6).

Plaintiff's last day of work was changed to February 4, 2015 at plaintiff's own election, and plaintiff continued to receive payments from DANY until March 2015 (Compl. ¶¶ 121, 124).

E.   Procedural History

Plaintiff timely filed a charge of discrimination with the Equal Opportunity Employment Commission (the "EEOC") (Compl. ¶¶ 127-30).  The EEOC issued plaintiff a Dismissal and Notice of Rights on March 16, 2015, dismissing plaintiff's charge and informing him of his right to bring a lawsuit (Compl. ¶ 130 & Ex. 4 attached thereto).  On June 8, 2015, plaintiff filed the complaint (Compl.).

III.  Analysis[5]

    A.  Legal Standards

        1.  General Pleading
           <u>Standard on a Motion to Dismiss</u>

    The general standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review:

> The Supreme Court has established a two-step
> process for determining whether a plaintiff has pled
> sufficient facts to overcome a motion to dismiss.  A
> court must first ignore "mere conclusory statements" or
> legal conclusions, which are not entitled to the pre-
> sumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662,
> 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing
> Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127

---

[5]As an initial matter, plaintiff argues that defendants' motion papers were not timely served on plaintiff and, therefore, defendants' motion should be denied in its entirety (Plaintiff's Notice of Opposition to Defendants' Motion to Dismiss, dated August 4, 2015 (Docket Item 13) ("Pl. Opp. Memo"), at 14-15).  On June 25, 2015, I ordered defendants to serve a copy of their motion on July 31, 2015 (Docket Item 12).  In compliance with my order, defendants mailed a copy of their motion papers to plaintiff on July 31, 2015, as permitted under Fed.R.Civ.P. 5(b)(2)(C) (Certificate of Service (Docket Item 17)).  As defendants note in their reply papers, "[t]he apparent basis for Plaintiff's argument is that he did not receive a copy of the motion via the Court's Electronic Case Filing ("ECF") system . . . because, pursuant to [my] Individual Practices, parties are not to file any motion papers on ECF until the motion is fully briefed" (Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, dated August 12, 2015 (Docket Item 18) ("Defs. Reply Memo"), at 2).  Accordingly, I conclude that plaintiff's argument is without merit.

> S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Then, assuming
> the veracity of the remaining facts, "a complaint must
> contain sufficient factual matter . . . to 'state a
> claim [for] relief that is plausible on its face.'"
> Id. (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).
> A claim is plausible "when the plaintiff pleads factual
> content that allows the court to draw the reasonable
> inference that the defendant is liable for the miscon-
> duct alleged."  Id. (emphasis added).  While this
> plausibility standard is not "akin to a 'probability
> requirement,'" it "asks for more than a sheer possibil-
> ity that a defendant has acted unlawfully."  Id. (quot-
> ing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  Pleading
> facts that are "'merely consistent with' a defendant's
> liability" is insufficient.  Id. (quoting Twombly, 550
> U.S. at 557, 127 S.Ct. 1955).

Pungitore v. Barbera, 506 F. App'x 40, 42 (2d Cir. 2012) (summary

order) (alteration, ellipsis and emphasis in the original).

Further, as noted above, where, as here, a plaintiff

proceeds pro se, the complaint must be liberally construed to

raise the strongest claims the allegations suggest.  Sykes v.

Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (per curiam); Tracy

v. Freshwater, 623 F.3d 90, 100-02 (2d Cir. 2010) (observing that

the "special solicitude" afforded to pro se plaintiffs includes

liberal construction of papers, "relaxation of the limitations on

the amendment of pleadings," leniency in enforcing procedural

rules, and "deliberate, continuing efforts to ensure that a pro

se litigant understands what is required of him").

13

2.   Pleading Standards
     for Sex Discrimination and
     Retaliation under Title VII

Title VII prohibits an employer from discriminating against an employee with respect to his compensation, terms, conditions or privileges of employment because of the employee's sex.  42 U.S.C. § 2000e-2(a)(1).  In McDonnell Douglas Corp. v. Green, the Supreme Court held that to establish a prima facie case of employment discrimination, a plaintiff must show that "(1) []he is a member of a protected class; (2) []he is qualified for h[is] position; (3) []he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

However, "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive at the motion-to-dismiss stage.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002); accord Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015); Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).  Rather, a plaintiff in a sex discrimination case need only "plausibly allege that (1) the employer took adverse action against him, and (2) his . . . sex .

14

. . was a motivating factor in the employment decision." Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 87.   Further, while "a formulaic recitation of the elements of a cause of action will not do," the court must nonetheless "assume the factual allegations in the complaint to be true, 'even if [they are] doubtful in fact.'"  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 86 (alteration in the original), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "the question [presented by a 12(b)(6) motion] is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'"  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 87 (emphases and second alteration in the original), quoting Bell Atl. Corp. v. Twombly, supra, 550 U.S. at 570.

        Title VII's anti-retaliation provision also prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  Thus, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must allege that:  (1) defen-

dants discriminated -- or took an adverse employment action --
against him, (2) 'because' he has opposed any unlawful employment
practice."  Vega v. Hempstead Union Free Sch. Dist., supra, 801
F.3d at 90.

> ### 3.  Pleading Standards
> for Discrimination and
> Retaliation under Section 1983

"To state a claim under § 1983, a plaintiff must allege
the violation of a right secured by the Constitution and laws of
the United States, and must show that the alleged deprivation was
committed by a person acting under color of state law."  West v.
Atkins, 487 U.S. 42, 48 (1988).  A state employee is considered
to be acting "under color of state law" where he is acting within
his official capacity.  Feingold v. New York, 366 F.3d 138, 159
(2d Cir. 2004).  Once the color of law requirement is satisfied,
a plaintiff's equal protection claim under Section 1983 "paral-
lels his Title VII claim."  Feingold v. New York, supra, 366 F.3d
at 159; accord Vega v. Hempstead Union Free Sch. Dist., supra,
801 F.3d at 88.

Like a Section 1983 discrimination claim, the elements
of a retaliation claim brought pursuant to Section 1983 "mirror
those under Title VII."  Vega v. Hempstead Union Free Sch. Dist.,
supra, 801 F.3d at 91.  Thus, to survive a motion to dismiss a

16

Section 1983 retaliation claim, "the plaintiff must plausibly allege that:  (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 91.

4. Pleading Standards for
   Discrimination and Retaliation
   under the NYSHRL and the NYCHRL

Discrimination and retaliation claims brought under the NYSHRL mirror those brought under Title VII.  Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014).  Accordingly, on a motion to dismiss, courts analyze NYSHRL claims "in tandem" with Title VII claims.  Brown v. Daikin Am. Inc., supra, 756 F.3d at 226 n.7.

Until relatively recently, the same was true of claims brought under the NYCHRL.  Velazco v. Columbus Citizens Found., 778 F.3d 409, 410 (2d Cir. 2015) (per curiam) ("[F]or many years, the NYCHRL was construed to be coextensive with its state and federal counterparts." (citation and quotation marks omitted)).  But in 2005, the New York City Council amended the NYCHRL to make clear that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination

17

plaintiffs, to the extent that such a construction is reasonably possible.'" Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted).  "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 109.  Accordingly, I shall analyze plaintiff's NYCHRL claims independently from his Title VII and NYSHRL claims.

    B.  Application of the Foregoing Principles

        1.  Plaintiff's Federal Claims

            a.  Sex Discrimination under
                Title VII and Section 1983[6]

    Defendants argue that plaintiff's federal sex discrimination claims fail because plaintiff has failed to plausibly allege that he was subjected to any adverse employment action

_____

    [6]Because defendants do not dispute that plaintiff has adequately alleged that Argyros and Savur were acting under color of state law, I shall address plaintiff's Title VII and Section 1983 discrimination claims together.  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 88 (noting that the elements of a discrimination claim brought pursuant to Section 1983 mirror those of a Title VII claim, with the additional requirement that "the adverse action was taken by someone acting 'under color of state law'").

(Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, dated July 31, 2015 (Docket Item 16) ("Defs. Memo"), at 8-12).

An adverse employment action occurs when a plaintiff "endures a materially adverse change in the terms and conditions of employment." Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 85, quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. N.Y.C. Bd. of Educ., supra, 202 F.3d at 640 (citation omitted).

> While there is no exhaustive list of what constitutes an adverse employment action, courts have held that the following actions, among others, may qualify: discharge or demotion; denial of a provisional or permanent promotion; addition of responsibilities; involuntary transfer that entails objectively inferior working conditions, denial of benefits; denial of a requested employment accommodation; denial of training that may lead to promotional opportunities; and a shift assignment that makes a normal life difficult for the employee.

Little v. Nat'l Broad. Co., 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002) (Scheindlin, D.J.) (citations omitted).

First, defendants argue that the investigation of Zohar's complaint against plaintiff in October 2014 does not constitute a materially adverse employment action (Def. Memo, at 8-11). Defendants are correct. See, e.g., Chang v. City of N.Y.

19

Dep't for the Aging, 11 Civ. 7062 (PAC)(JLC), 2012 WL 1188427 at
*5 (S.D.N.Y. Apr. 10, 2012) (Cott, M.J.) (holding that plaintiff
failed to allege an adverse employment action where plaintiff had
been investigated for violating the employer's code of conduct
and had received "disciplinary notices"), adopted at, 2012 WL
2156800 (S.D.N.Y. June 14, 2012) (Crotty, D.J.); Rider v. Town of
Farmington, 162 F. Supp. 2d 45, 53 (D. Conn. 2001) ("The investi-
gation [of an employee's conduct] alone is insufficient, as a
matter of law, to constitute an adverse employment action for the
purposes of a disparate treatment claim."); see also Weeks v.
N.Y. State Div. of Parole, 273 F.3d 76, 86 (2d Cir. 2001) (a
notice informing an employee of incompetence and a "counseling
memo" concerning the employee's conduct, in the absence of any
allegation of negative effects on plaintiff's job conditions,
could not constitute an adverse employment action), abrogated on
other grounds, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.
101, 108-14 (2002).

　　　　Second, defendants argue that plaintiff's allegation
that he was placed under "a separate set of rules" from female
employees does not constitute an adverse employment action (Defs.
Memo, at 11).  According to plaintiff, the "separate set of
rules" to which he was subject consisted of defendants' telling
plaintiff that (1) he should not discuss relationships, religion

or personal finances at work; (2) any friendships he had with his coworkers ended when he came into work; (3) he should treat everything he does as if it would end up in a newspaper; (4) he "should evaluate the culture of an organization, decide if [he] fit[s] in, and if not, move on"; (5) he should act in a manner such that his actions could never be questioned; (6) office humor can be risky; (7) he should avoid conversations about Zohar; (8) he should not retaliate against Zohar and (9) he should be respectful to Zohar (Compl. ¶¶ 76, 78-87).  At best, this "separate set of rules" amounts to nothing more than plaintiff being "more closely monitored" than his coworkers; such monitoring is not a materially adverse employment action.  Petyan v. N.Y.C. Law Dep't, 14 Civ. 1434 (GBD)(JLC), 2015 WL 1855961 at *10 (S.D.N.Y. Apr. 23, 2015) (Cott, M.J.) (Report & Recommendation) ("[T]he fact that Petyan was more closely monitored than other employees does not constitute adverse employment action in the absence of other negative results, such as a decrease in pay or being placed on probation." (quotation marks and citation omitted)), adopted at, 2015 WL 4104841 (S.D.N.Y. July 2, 2015) (Daniels, D.J.); accord Castro v. N.Y.C. Bd. of Educ. Pers., 96 Civ. 6314 (MBM), 1998 WL 108004 at *7 (S.D.N.Y. Mar. 12, 1998) (Mukasey, D.J.) ("[A]lthough reprimands and close monitoring may cause an em-

ployee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

Third, defendants argue that plaintiff's allegations that they investigated his complaints regarding Zohar's conduct differently than Zohar's complaints regarding plaintiff's conduct, and violated their internal EEO policies in doing so, also does not constitute an adverse employment action (Defs. Memo, at 11-12; Defs. Reply Memo, at 3-5).  In support of this argument, defendants cite to Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712 (2d Cir. 2010).  In Fincher, the Second Circuit held that the failure to investigate a complaint of discrimination was not an adverse employment action for the purposes of a Title VII retaliation claim and also did not contribute to any hostile work environment for a sexual harassment claim under Title VII.  604 F.3d at 721, 724.[7]  While Fincher did not address whether a

---

[7]With respect to the hostile work environment claim, the Fincher court noted that "[federal] courts (including district courts in this circuit) appear to have uniformly rejected the notion that a failure adequately to remediate sexual harassment itself constitutes an act that may contribute to a hostile work environment claim."  Fincher v. Depository Trust & Clearing Corp., supra, 604 F.3d at 724 (alterations in the original), quoting Chan v. N.Y.C. Transit Auth., No. 03 Civ. 6239, 2004 WL 1812818 at *5 (E.D.N.Y. July 19, 2004).  Further, "when . . . offensive statements are learned of secondhand, they are insufficiently 'severe and per[vasive], in and of themselves, to support a claim for a hostile work environment under [Title VII]."  Sletten v. LiquidHub, Inc., 13 Civ. 1146 (NRB), 2014 WL
(continued...)

failure to investigate is adverse in the context of a discrimination claim, as is the case here, courts within this Circuit have extended Fincher to reach direct discrimination claims. See, e.g., Petyan v. N.Y.C. Law Dep't, supra, 2015 WL 1855961 at *11 ("[F]ailure to properly investigate Petyan's claim does not constitute an adverse employment action."); Hong Yin v. N. Shore LIJ Health Sys., 20 F. Supp. 3d 359, 374 (E.D.N.Y. 2014) ("[A]n employer's failure to investigate discrimination claims is not an adverse employment action."); Eldridge v. Rochester City Sch. Dist., 968 F. Supp. 2d 546, 558 (W.D.N.Y. 2013) ("[Defendant]'s alleged failure to investigate Eldridge's complaint of discrimination . . . does not constitute an adverse employment action.").[8]   Therefore, I conclude that plaintiff's allegation

---

[7](...continued)
3388866 at *7 (S.D.N.Y. July 11, 2014) (Buchwald, D.J.). Therefore, to the extent the complaint can be construed as asserting hostile work environment claims under Title VII or Section 1983 based on Zohar's comments to plaintiff's coworkers and defendants' alleged failure to remediate or investigate those comments, I recommend that such claims be dismissed.

[8]There is at least one District Court decision within this Circuit that has held that failure to follow internal procedures and adequately investigate a complaint can constitute an adverse employment action under Title VII. Valenti v. Massapequa Union Free Sch. Dist., No. 09-CV-977 (JFB)(MLO), 2010 WL 475203 at *5 (E.D.N.Y. Feb. 5, 2010) (holding that a school's failure to conduct a full investigation of a student's allegations that a teacher had inappropriately touched the student and the school's failure to discipline the student for making a false report were sufficient to plead that the teacher suffered an adverse

(continued...)

that defendants did not follow their own internal EEO policies when they failed to investigate plaintiff's complaint in the same manner they investigated Zohar's complaint fails to allege an adverse employment action.

Finally, the complaint includes allegations that defendants "were hostile towards plaintiff, utilizing words like dumb, delusional, you kept your job, oversensitive, and gathering information"; gave Zohar "special seating and scheduling privileges"; failed to provide plaintiff with a copy of the EEO policy and failed to "prominently display[]" the EEO policy statement; "insinuated multiple times that something was wrong with plain-

---

[8](...continued)
employment action under Title VII).  However, <u>Valenti</u> was decided prior to the Second Circuit decision in <u>Fincher</u>.  Additionally, while <u>Valenti</u> held that failure to investigate could constitute an adverse employment action, it did so by citing two cases that discuss failure to investigate in the context of the "inference of discrimination" prong of <u>McDonnell Douglas</u>, not the "adverse employment" prong.  <u>Valenti v. Massapequa Union Free Sch. Dist.</u>, <u>supra</u>, 2010 WL 475203 at *5 & n.9 ("The Court recognizes that the 'selective enforcement' aspect of plaintiff's claim, as well as the plaintiffs' claims in the cited cases, relate to the 'inference of discrimination' prong of the <u>McDonnell Douglas</u> evidentiary standard."), <u>citing</u> <u>Flynn v. N.Y. State Div. of Parole</u>, 620 F. Supp. 2d 463, 498 (S.D.N.Y. 2009) (Conner, D.J.); <u>Walker v. N.Y.C. Dep't of Corr.</u>, 01 Civ. 1116 (LMM), 2008 WL 4974425 at *15-*16 (S.D.N.Y. Nov. 19, 2008) (McKenna, D.J.).  Because <u>Valenti</u> preceded <u>Fincher</u> and was really addressing a different issue, I shall follow the post-<u>Fincher</u> decisions and conclude that defendants' alleged failure to follow internal procedures and adequately investigate a complaint is not an adverse employment action under Title VII.

tiff or plaintiff's perception of reality" and failed to conduct
a unit training on EEO policies (Comp. ¶¶ 46-48, 50, 64, 102,
108-14).

          None of these actions constitutes an adverse employment
action under Title VII because plaintiff has not alleged that
they created a "'materially adverse change in the terms and
conditions' of [plaintiff's] employment." Rowe v. Jagdamba,
Inc., 302 F. App'x 59, 62 (2d Cir. 2008) ("isolated incidents of
adverse treatment in scheduling and table assignments" are not
materially adverse actions under Title VII); see also Ingrassia
v. Health & Hosp. Corp., --- F. Supp. 3d ---, No. 14 CV 1900 PKC,
2015 WL 5229444 at *1, *7 (E.D.N.Y. Sept. 8, 2015) (dismissing a
sex and age discrimination complaint for failure to plead an
adverse employment action where the adverse employment actions
consisted of a supervisor's repeated derogatory comments about
women, such as his statement that "he did not like women and that
they were only good for sex"); Sotomayor v. City of New York, 862
F. Supp. 2d 226, 254 (E.D.N.Y. 2012) ("Criticism of an employee
in the course of evaluating and correcting her work is not an
adverse employment action."), aff'd, 713 F.3d 163 (2d Cir. 2013);
Martinez v. N.Y.C. Dep't of Educ., 04 Civ. 2728 (LTS)(DFE), 2008
WL 2220638 at *12 (S.D.N.Y. May 27, 2008) (Swain, D.J.)
("[I]ncidents where [a supervisor] publicly yelled at Plaintiff

for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable [under Title VII].").  Accordingly, I conclude that plaintiff has failed to allege any adverse employment action under Title VII and Section 1983, and recommend that plaintiff's Title VII discrimination claims and Section 1983 discrimination claims be dismissed against all defendants.[9]

Defendants also argue that plaintiff has failed plausibly to allege facts that give rise to an inference of discrimination (Defs. Memo, at 12-15).  Because I conclude that plaintiff has failed to allege an adverse employment action under Title VII, I "need not reach the question of whether any hypothetical

---

[9]Defendants also contend that, "to the extent that Plaintiff's first cause of action [for discrimination under Title VII] . . . could be read as an attempt to assert a 'disparate impact' claim, it must also be dismissed as it is not properly pleaded and [is] implausible" (Defs. Memo, at 6 n.2).  A prima facie disparate impact claim requires that plaintiff "point[] out the specific employment practice [he] is challenging and then demonstrat[e] that the challenged employment practice caused a significant disparate impact on a protected group."  E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus., 186 F.3d 110, 117 (2d Cir. 1999).  In making his Title VII discrimination claim, plaintiff includes a conclusory allegation that DANY's zero-tolerance sexual harassment policy "disproportionately adversely impact[s] male employees" (Compl. ¶ 154).  However, plaintiff does not allege any facts that give rise to even a minimal inference that DANY's zero-tolerance policy has a disparate impact on male employees as a group.  Accordingly, to the extent the complaint can be construed as asserting a Title VII disparate impact claim, I recommend that claim be dismissed.

injury could plausibly have been attributed to discriminatory animus." <u>Chung v. City Univ. of N.Y.</u>, 605 F. App'x 20, 23 (2d Cir. 2015) (summary order).

b.  Retaliation under
Title VII and Section 1983[10]

Defendants argue that plaintiff's federal retaliation
claims fail for two reasons.  First, defendants argue that
plaintiff has failed to allege adequately that he engaged in a
protected activity (Defs. Memo, at 16-17; Defs. Reply Memo, at 6-
7).  Second, defendants argue that plaintiff has failed to allege

---

[10]As an initial matter, defendants correctly argue that
plaintiff's Title VII retaliation claims against Savur and
Argyros should be dismissed because there is no individual
liability under Title VII (Defs. Memo, at 6 n.2, citing Reynolds
v. Barrett, 685 F.3d 193, 202 (2d Cir. 2012)).  Additionally,
"[a] plaintiff may not bring a Title VII claim against an
individual in his or her official capacity if the claim is
duplicative of the claim against the public employer."  Yu v.
N.Y. State Unified Court Sys. Office of Court Admin., 1 Civ.
3226 (JMF), 2013 WL 3490780 at *4 (S.D.N.Y. July 12, 2013)
(Furman, D.J.).  Defendants also correctly argue that plaintiff's
Section 1983 claims against the City, DANY, and Savur and Argyros
in their official capacities should be dismissed because
plaintiff has not alleged any facts that support an inference
that the actions taken against plaintiff were done pursuant to
any municipal policy or custom (Defs. Memo, at 6 n.3, citing
Zherka v. City of New York, 459 F. App'x 10, 12 (2d Cir. 2012)
(summary order) (citation omitted)).  Accordingly, to the extent
plaintiff asserts Title VII retaliation claims against Savur and
Argyros and Section 1983 retaliation claims against the City,
DANY, and Savur and Argyros in their official capacities only, I
recommend that those claims be dismissed.

In addition, because (1) a Section 1983 retaliation claim
mirrors a Title VII claim except for the additional requirement
that the defendants must have been acting under color of state
law,  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at
91, and (2) defendants do not dispute that Argyros and Savur were
acting under color of state law, I address plaintiff's Title VII
and Section 1983 retaliation claims together.

that his termination was "because" he opposed any unlawful employment activity (Defs. Memo, at 17-18; Defs. Reply Memo, at 7-8).[11]

### i.  Protected Activity

Section 704(a) of Title VII provides that it is unlawful "for an employer to discriminate against any of his employees . . . because [that employee] has opposed any practice" that is unlawful under Title VII.  42 U.S.C. § 2000e-3(a).  This requires plaintiff to plead facts that plausibly lend support to an inference (1) that plaintiff "'participat[ed] in a protected activity [and] (2) that the defendant knew of the protected activity.'"  Littlejohn v. City of New York, supra, 795 F.3d at 316, quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).  "With respect to the first element, the plaintiff need not establish that the conduct []he opposed was actually a violation of Title VII, but only that []he possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute."  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (citations and quotation marks omitted).  However, "[m]ere subjective good faith belief is

---

[11]Defendants do not dispute that plaintiff's termination constitutes an adverse employment action.

insufficient[;] the belief must be reasonable and characterized by objective good faith."  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs., P.C., 716 F.3d 10, 16 (2d Cir. 2013)(alterations and emphasis in the original), quoting Sullivan-Weaver v. N.Y. Power Auth., 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000) (Brieant, D.J.).

  As to the second element, the Supreme Court has recently clarified that, "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." Littlejohn v. City of New York, supra, 795 F.3d at 31 (alteration and ellipsis in the original), quoting Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 276 (2009).  Nonetheless, "[a]lthough particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs., P.C., supra, 716 F.3d at 17.

  Defendants make three separate arguments in support of their contention that plaintiff has failed to allege that he was

engaged in a protected activity of which defendants were aware.
First, defendants argue that plaintiff's complaints of discrimi-
nation "appear to be nothing more than his participation in and
concerns with the DANY investigation of the complaint brought
against him by Ronit Zohar" (Defs. Memo, at 16).  Second, defen-
dants argue that plaintiff has conceded in the complaint that he
did not believe that any members of the grand jury stenographers
unit had violated any of the City's EEO policies and, therefore,
his complaints could not constitute protected activities (Defs.
Reply Memo, at 6).  Third, defendants argue that at the time of
plaintiff's complaints to defendants, defendants were not aware
that plaintiff's opposition was directed at conduct prohibited by
Title VII (Defs. Reply Memo, at 6-7).

　　　　With respect to defendants' first two arguments, both
of which address whether plaintiff had a reasonable, good faith
belief that he was engaging in a protected activity, defendants
rely on Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs.,
P.C., supra, 716 F.3d at 17; Rojas v. Roman Catholic Diocese of
Rochester, 660 F.3d 98, 108 (2d Cir. 2011) (per curiam), and
Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., supra, 136 F.3d
at 292.

　　　　Each of these cases is inapposite to the facts alleged
here.  First, both Rojas and Galdieri-Ambrosi are inapposite

because neither involved a motion to dismiss; rather, each of these cases involved a motion in which the court was not bound to accept the truth of the plaintiff's well pleaded allegations. See Rojas v. Roman Catholic Diocese of Rochester, supra, 660 F.3d at 108 (holding that the district court did not err in granting summary judgment where the plaintiff's affidavit regarding the contents of her complaints contradicted her prior deposition testimony and defendants' "proffered reason for [the plaintiff's] termination . . . was legitimate, nonretaliatory, and nonpretextual"); Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., supra, 136 F.3d at 292 (affirming the entry of judgment as a matter of law for the defendant employer after a jury verdict for the plaintiff employee because there was "no semblance of gen-der-oriented motivation in the events or conversations to which [plaintiff] testified").

Although Kelly was decided at the motion-to-dismiss stage, it too is factually distinct from the allegations here. In Kelly, the plaintiff, a female employee, alleged that she was the victim of "sexual favoritism" -- which has been referred to as "paramour preference" by the Second Circuit -- because one of her supervisors was having an affair with a different female employee and was showing favoritism toward that employee. Kelly

32

v. Howard I. Shapiro & Assocs. Consulting Eng'rs., P.C., supra,
716 F.3d at 14.

Here, in contrast, plaintiff alleges that he complained
to defendants that he was being treated differently than female
stenographers on at least two separate occasions:  (1) on Novem-
ber 7, 2014, when plaintiff complained of Zohar's comments that
he was a "stalker" and "raised concerns that defendants should
consider how defendants would have treated plaintiff if plaintiff
had acted in the manner Ronit Zohar had acted" (Compl. ¶¶ 69-73)
and (2) on December 19, 2014, when plaintiff stated that he was
being subjected to "a different set of rules from female cowork-
ers" and "did not feel equal to coworkers" (Compl. ¶¶ 96, 98-99).
Most importantly, plaintiff also alleges that on December 19,
2014 he "made defendants aware that he was concerned about
defendants' investigatory neutrality" (Compl. ¶ 97).  These
allegations are sufficient to establish that plaintiff had a
good-faith basis for his belief that the conduct of which he
complained is unlawful under Title VII.  Indeed, as discussed in
section III.B.1.a, supra, an employer's failure to investigate
and redress a complaint brought by a male employee when the
employer has done so for complaints brought by female employees
can constitute unlawful sex discrimination under Title VII.
Valenti v. Massapequa Union Free Sch. Dist., supra, 2010 WL

475203 at *5 (E.D.N.Y. Feb. 5, 2010). Accordingly, I conclude that plaintiff has adequately alleged a reasonable, good-faith belief that he engaged in a protected activity for the purposes of surviving a motion to dismiss.

Finally, defendants' third argument addresses whether defendants were aware that plaintiff was engaging in a protected activity when he complained of differential treatment. In support of this argument, defendants again cite to Kelly, as well as to Dollinger v. N.Y. State Ins. Fund, No. 3:14-CV-00908 MAD, 2015 WL 1446892 at *8 (N.D.N.Y. Mar. 30, 2015). As discussed above, Kelly is inapposite because it dealt with a complaint of "paramour preference," not a complaint of differential treatment of male versus female employees. In Dollinger, the plaintiff had complained of "conduct [that] was clearly directed at Plaintiff's sexual orientation, not Plaintiff's sex." Dollinger v. N.Y. State Ins. Fund, supra, 2015 WL 1446892 at *8. Discrimination on the basis of sexual orientation is not prohibited by Title VII. Dollinger v. N.Y. State Ins. Fund, supra, 2015 WL 1446892 at *4, citing Kiley v. American Soc. for Prevention of Cruelty to Animals, 296 F. App'x 107, 109 (2d Cir. 2008) (summary order) ("[S]exual orientation is not included in the statutory protected class [under Title VII].").

Here, in contrast, there is nothing in the complaint that indicates that defendants were not aware that plaintiff was complaining that he was being treated differently than female stenographers because of his sex.  For example, Plaintiff alleges that, on December 19, 2014, he informed defendants that he "did not feel equal to female employees" and that he "was on a different set of rules from female employees" (Compl. ¶¶ 98-99).  Accordingly, I conclude that plaintiff has alleged facts that plausibly support the inference that defendants were aware that plaintiff was complaining of sex discrimination.  Thomson v. Odyssey House, No. 14-CV-3857 MKB, 2015 WL 5561209 at *21 (E.D.N.Y. Sept. 21, 2015) (denying a motion to dismiss a retaliation claim brought under 42 U.S.C. § 1981 where plaintiff had "generically alleged that she 'complained' about" racially-charged derogatory remarks), appeal docketed, No. 15-3363 (2d Cir. Oct. 22, 2015).

### ii.  Causation

In order to adequately plead causation for a retaliation claim under Title VII, "a plaintiff must [also] plausibly plead a connection between the act and his engagement in protected activity."  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 90.  "A retaliatory purpose can be shown

indirectly by timing:  protected activity followed closely in time by adverse employment action."  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 90.  "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 90.  "'[B]ut-for' causation does not[, however,] require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 90-91 (alterations in the original), quoting Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).  "Further, 'the but-for causation standard does not alter the plaintiff's ability to demonstrate causation . . . through temporal proximity.'"  Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 91 (ellipsis in the original), quoting Zann Kwan v. Andalex Grp. LLC, supra, 737 F.3d at 845.

Here, defendants argue that because plaintiff was terminated on February 2, 2015 -- which is less than seven weeks after his December 19, 2014 conversation with Argyros and Savur -- he has failed to adequately allege temporal proximity suffi-

36

cient for his claim to survive a motion to dismiss.[12]  In support
of this argument, defendants cite to three cases:  Clark Cty.
Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam);
Galimore v. City Univ. of N.Y. Bronx Cmty. Coll., 641 F. Supp. 2d
269, 288 (S.D.N.Y. 2009) (Sullivan, D.J.), and Hussein v. Hotel
Emps. & Rest. Union, 108 F. Supp. 2d 360, 367 (S.D.N.Y. 2000)
(Scheindlin, D.J.), vacated sub nom., 14 F. App'x 39 (2d Cir.
2001).  These cases are inapposite, however, for two reasons.
First, each of these cases was decided at the summary judgment
stage -- not on a motion to dismiss.  Second, these cases are
either factually distinguishable from the allegations in this
case, where plaintiff's termination took place less than two

--------

[12]Defendants also argue that because the complaint "admits
that [plaintiff] was a temporary employee . . . and that he was
told the reason he was terminated was on account of his temporary
status," he has failed to plead facts suggesting a discriminatory
reason for his termination (Defs. Memo, at 17-18).  These
admissions are "immaterial" to whether plaintiff has sufficiently
pled retaliatory animus, Lenart v. Coach Inc., --- F. Supp. 3d
---, 15 Civ. 1922 (JMF), 2015 WL 5319735 at *7 (S.D.N.Y. Sept.
11, 2015) (Furman, D.J.) (holding that "[w]hether an employer had
a nondiscriminatory reason for firing a plaintiff is a question
that a court reaches only at step two of the McDonnell Douglas
framework" and not at the motion-to-dismiss stage); accordingly,
this argument is rejected.  Moreover, plaintiff's status as a
temporary employee is immaterial to his discrimination and
retaliation claims.  Title VII's protections do not exclude
temporary employees.  See Goodwin v. Orange & Rockland Utilities,
Inc., 04 Civ. 0207 (WCC), 2005 WL 2647929 at *4 (S.D.N.Y. Oct.
14, 2005) (Conner, D.J.) (a plaintiff paid by an employment
agency and staffed as a "temporary employee" of the defendant was
an employee of the defendant under Title VII).

months after his final complaint, or actually are contrary to defendants' argument.  For instance, in <u>Clark Cty. Sch. Dist. v. Breeden</u>, the adverse employment action took place 20 months after the protected activity.  <u>Clark Cty. Sch. Dist. v. Breeden</u>, <u>supra</u>, 532 U.S. at 273.  In <u>Hussein v. Hotel Emps. & Rest. Union</u>, the Court stated in <u>dicta</u> that "the passage of more than two months defeats any retaliatory nexus" but did not address a time period of less than two months.  <u>Hussein v. Hotel Emps. & Rest. Union</u>, <u>supra</u>, 108 F. Supp. 2d at 367.  Finally, in <u>Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.</u>, the court found that the plaintiff had established a <u>prima facie</u> case for retaliation where the protected activity occurred "less than two months before" the adverse action.  <u>Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.</u>, <u>supra</u>, 641 F. Supp. 2d at 288.

Further, the Second Circuit has held that an adverse action that occurs within two months or less of a protected activity -- as is alleged here -- is sufficient to survive a motion to dismiss on the issue of causation.  <u>Vega v. Hempstead Union Free Sch. Dist.</u>, <u>supra</u>, 801 F.3d at 92 (allegations of adverse employment actions taken within two to three months of protected activities adequately pled causation); <u>see also Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining,

for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship."); Purdie v. City Univ. of New York, 13 Civ. 6423 (NRB), 2015 WL 129552 at *11 (S.D.N.Y. Jan. 8, 2015) (Buchwald, D.J.) ("Although a seven-month gap is almost certainly too long, taken by itself, to make causation probable, it is not so long as to render causation implausible."). Therefore, I conclude that Plaintiff has adequately pled causation for his Title VII and Section 1983 retaliation claim.[13]

Accordingly, I respectfully recommend that defendants' motion to dismiss plaintiff's Title VII retaliation claims against DANY and the City and plaintiff's Section 1983 retaliation claims against Argyros and Savur in their individual capacities be denied.

---

[13]Defendants also argue that plaintiff's Section 1983 claims should be dismissed because the Second Circuit does not recognize retaliation claims brought pursuant to Section 1983 (Defs. Memo, at 15 n.5). In Vega v. Hempstead Union Free Sch. Dist., the Second Circuit held that "a state employee may bring a retaliation claim under § 1983 against a supervisor who, acting under color of law, retaliates against him for opposing discrimination in the terms of his employment." Vega v. Hempstead Union Free Sch. Dist., supra, 801 F.3d at 82. Accordingly, defendants' argument is rejected.

2.  <u>Plaintiff's State Law Claims</u>

I further recommend that supplemental jurisdiction be exercised as to plaintiff's various state law claims because the state law claims arise out of the same set of events as plaintiff's federal retaliation claims.  <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 723 (2d Cir. 2002). I shall, therefore, also address the merits of defendants' arguments concerning these claims.

a.  <u>Discrimination under the NYSHRL</u>

"New York courts rely on federal law when determining claims under the [NYSHRL]."  <u>Brown v. Daikin Am., Inc.</u>, <u>supra</u>, 756 F.3d at 226 n.7, <u>quoting</u> <u>Hicks v. Baines</u>, <u>supra</u>, 593 F.3d at 164.  Accordingly, plaintiff's NYSHRL discrimination claims should be dismissed for the same reasons as his Title VII discrimination claims.

b.  <u>Discrimination under the NYCHRL</u>

Section 8-107(1)(a) of the NYCHRL provides that it is "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof . . . to refuse to hire or employ or to bar or to discharge from employment [a] person or to discrimi-

nate against [a] person in compensation or in terms, conditions
or privileges of employment" because of that person's sex or
gender.  N.Y.C. Admin. Code § 8-107(1)(a).  The phrase "discrimi-
nate against . . . in terms, condition or privileges of employ-
ment" is construed broadly such that "liability is normally
determined simply by the existence of differential treatment."
<u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, <u>supra</u>, 715
F.3d at 110 (ellipsis in the original), <u>citing</u> <u>Williams v. N.Y.C.</u>
<u>Hous. Auth.</u>, 61 A.D.3d 62, 75, 872 N.Y.S.2d 27, 38 (1st Dep't
2009).  Accordingly,

> in order to make out the third prong of a prima facie
> case of discrimination under the NYCHRL, a plaintiff
> must simply show that she was treated differently from
> others in a way that was more than trivial, insubstan-
> tial, or petty.  The fourth prong of the prima facie
> case is satisfied if a member of a protected class was
> treated differently than a worker who was not a member
> of that protected class.

<u>Williams v. Regus Mgmt. Grp., LLC</u>, 836 F. Supp. 2d 159, 173
(S.D.N.Y. 2011) (Scheindlin, D.J.).[14]

---

[14]Under the NYCHRL, "[t]he standards for discrimination and
hostile work environment are the same."  <u>Roberts v. United Parcel</u>
<u>Serv., Inc.</u>, --- F. Supp. 3d ---, No. 13-CV-6161, 2015 WL 4509994
at *20 (E.D.N.Y. July 27, 2015); <u>citing</u> <u>Johnson v. Strive E.</u>
<u>Harlem Emp't Grp.</u>, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014)
(Baer, D.J.) ("[U]nder the NYCHRL, there are not separate
standards for 'discrimination' and 'harassment' claims."
(citation omitted)).  Accordingly, to the extent that plaintiff
asserts a hostile work environment claim under the NYCHRL, I
shall address such a claim together with plaintiff's NYCHRL
(continued...)

Defendants argue that plaintiff fails to allege both an adverse employment action and facts giving rise to an inference of discrimination.  I shall address both of defendants' arguments below.

### i.  Adverse Employment Action

As discussed above, unlike Title VII or the NYSHRL, "the NYCHRL does not require . . . materially adverse employment actions.  Instead, a focus on unequal treatment based on gender -- regardless of whether the conduct is tangible (like hiring or firing) or not -- is in fact the approach that is most faithful to the [NYCHRL's] uniquely broad and remedial purposes." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 114 (citations and quotation marks omitted).  Accordingly, conduct that does not constitute an adverse action under Title VII or the NYSHRL may, nevertheless, constitute an adverse action under the NYCHRL.  See, e.g., Kellman v. Metro. Transp. Auth., 8 F. Supp. 3d 351, 379 (S.D.N.Y. 2014) (Batts, D.J.) (the denial of work-place training was an adverse action under the NYCHRL even though it did not affect plaintiff's wages or chances for promotion and was not adverse under Title VII or the NYSHRL); Sotomayor v. City

---

[14](...continued)
discrimination claim.

of New York, supra, 862 F. Supp. 2d at 255, 257-58 (holding that
negative observations and evaluations of plaintiff that did not
trigger negative consequences for plaintiff's employment were
adverse actions under the NYCHRL even though they were not
adverse under Title VII or the NYSHRL).

"When applying this standard, however, district courts
must be mindful that the NYCHRL is not a 'general civility
code.'"  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
supra, 715 F.3d at 110, quoting Williams v. N.Y.C. Hous. Auth.,
supra, 61 A.D.3d at 79, 872 N.Y.S.2d at 40-41.  Thus,

> [e]ven if the plaintiff establishes that []he was
> treated less well because of h[is] gender, defendants
> may assert an affirmative defense whereby [they] can
> still avoid liability if they prove that the conduct
> complained of consists of nothing more than what a
> reasonable victim of discrimination would consider
> petty slights and trivial inconveniences.  As with most
> affirmative defenses, the employer has the burden of
> proving the conduct's triviality under the NYCHRL.

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., supra, 715
F.3d at 111 (citations and quotations omitted).

Here, plaintiff has alleged that he was treated "less
well" when he made his EEO complaint than Zohar was when she made
her EEO complaint.  Specifically, plaintiff alleges that (1) his
EEO complaint regarding Zohar's conduct was not received or
adequately investigated while Zohar's complaint was received and
adequately investigated; (2) after he complained of Zohar's

conduct, defendants' told him to treat Zohar respectfully but did
not tell Zohar to treat plaintiff respectfully; (3) defendants
"urged plaintiff . . . to see a psychiatrist" and "insinuated
multiple times that something was wrong with plaintiff or plain-
tiff's perception of reality," which they did not do when meeting
with Zohar, and (4) "defendants were hostile towards plaintiff,
utilizing words like dumb, delusional . . . [and] oversensitive,"
but "never used such words against any female complainant"
(Compl. ¶¶ 76, 95, 102-03, 111-13, 150-52).  These allegations
are sufficient to allege an adverse action -- i.e. that plaintiff
was treated "less well" -- under the NYCHRL. Mihalik v. Credit
Agricole Cheuvreux N. Am., Inc., supra, 715 F.3d at 110-11; see
also Dowrich-Weeks v. Cooper Square Realty, Inc., 535 F. App'x 9,
11-12 & n.3 (2d Cir. 2013) (summary order) ("negative remarks" by
a supervisor, having an office assignment moved, being denied an
alternative work schedule, and having job responsibilities
altered were not adverse under Title VII and the NYSHRL but were
"adverse employment actions" under the NYCHRL) (internal citation
omitted); Williams v. Regus Mgmt. Grp., LLC, supra, 836 F. Supp.
2d at 175-76 (denying a motion for summary judgment on a NYCHRL
discrimination claim where the employer would ignore the plain-
tiff's opinion but not the opinion of Caucasian employees and
communicated with plaintiff differently than Caucasian employ-

ees); <u>Forgione v. City of New York</u>, No. 11-CV-5248, 2012 WL
4049832 at *6 (E.D.N.Y. Sept. 13, 2012) (holding that the plain-
tiff's allegations that defendants twice referred plaintiff for
psychological evaluation were sufficient to allege an adverse
action under the NYCHRL).[15]

 Accordingly, I conclude that plaintiff has sufficiently
alleged that he was treated "less well" so as to plead an adverse
employment action under the NYCHRL.

_____

[15]While defendants contend that the alleged adverse actions
discussed above are not sufficiently adverse to state a
discrimination claim under the NYCHRL, a motion to dismiss is not
the appropriate stage in the litigation for addressing that
issue. <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, <u>supra</u>,
715 F.3d at 111 (stating that whether actions are "petty slights
and trivial inconveniences" is an affirmative defense that "the
employer has the burden of proving . . . under the NYCHRL".)
Indeed, while there are decisions within this Circuit that have
found that the type of conduct plaintiff alleges fails to
constitute an adverse employment action even under the NYCHRL,
<u>Thelwell v. City of New York</u>, 13 Civ. 1260 (JGK), 2015 WL 4545881
at *12 (S.D.N.Y. July 28, 2015) (Koeltl, D.J.) (criticism by a
supervisor, including calling plaintiff "unreasonable," did not
constitute a hostile work environment under NYCHRL); <u>Dressler v.
N.Y. City Dep't of Educ.</u>, 10 Civ. 3769 (JPO), 2012 WL 1038600 at
*10 (S.D.N.Y. Mar. 29, 2012) (Oetken, D.J.) (holding that "harsh
criticism" and "increased scrutiny" did not constitute a hostile
work environment under NYCHRL), those cases were decided at the
summary judgment stage where the defendants had the chance to
assert the affirmative defense that the actions complained of, in
light of the totality of the circumstances, were merely trivial.

ii.   Inference of Discrimination

"Under the NYCHRL, 'the inference of discrimination prong of the prima facie case is satisfied if a member of a protected class was treated differently than a worker who was not a member of that protected class.'"   Kellman v. Metro. Transp. Auth., supra, 8 F. Supp. 3d at 380, quoting, Leon v. Columbia Univ. Med. Ctr., 11 Civ. 8559 (NSR), 2013 WL 6669415 at *11 (S.D.N.Y. Dec. 17, 2013) (Román, D.J.).   In order to use differ-ential treatment as the basis for an inference of discrimination, however, a "comparator[] must be 'similarly situated in all material respects [to the plaintiff].'"   LeBlanc v. United Parcel Serv., 11 Civ. 6983 (KPF), 2014 WL 1407706 at *15 (S.D.N.Y. Apr. 11, 2014) (Failla, D.J.), quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997).

> What constitutes all material respects . . .
> varies somewhat from case to case and . . . must be
> judged based on [i] whether the plaintiff and those he
> maintains were similarly situated were subject to the
> same workplace standards and [ii] whether the conduct
> for which the employer imposed discipline was of compa-
> rable seriousness.   In other words there should be an
> objectively identifiable basis for comparability.

LeBlanc v. United Parcel Serv., supra, 2014 WL 1407706 at *15 (ellipsis in the original) (quotation marks omitted), citing Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 459-60 (S.D.N.Y. 2006) (Holwell, D.J.).   "[A]n employee's conduct need not be

46

identical to that of another for the two to be similarly situated." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000). Rather, the standard applied by the Second Circuit simply requires "comparable conduct." Graham v. Long Island R.R., supra, 230 F.3d at 40. "Ordinarily, '[w]hether two employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss." Brown v. Daikin Am. Inc., supra, 756 F.3d at 230 (alteration and ellipsis in the original), quoting Graham v. Long Island R.R., supra, 230 F.3d at 39.

Here, as discussed in Section III.B.2.b.i, supra, plaintiff alleges that (1) his EEO complaint regarding Zohar's conduct was not received or adequately investigated while Zohar's complaint was received and adequately investigated; (2) after he complained of Zohar's conduct, defendants told him to treat Zohar respectfully but did not tell Zohar to treat plaintiff respectfully; (3) defendants "insinuated multiple times that something was wrong with plaintiff or plaintiff's perception of reality," which they did not do when meeting with Zohar, and (4) "defendants were hostile towards plaintiff, utilizing words like dumb, delusional . . . [and] oversensitive," but "never used such words against any female complainant" (Compl. ¶¶ 76, 95, 102-03, 111-13, 150-52). These allegations satisfy the requirement that

47

plaintiff allege that he "was treated differently than a worker who was not a member of [his] protected class." <u>Williams v. Regus Mgmt. Grp., LLC</u>, <u>supra</u>, 836 F. Supp. 2d at 173.

Defendants nonetheless contend that these allegations of differential treatment do not raise an inference of discrimination because plaintiff has failed to allege that any other stenographer engaged in similar conduct to plaintiff. Specifically, defendants argue that plaintiff's claim fails because plaintiff does not allege that "any other stenographer was the subject of a sexual harassment complaint by a co-worker" (Defs.

Reply Memo, at 5; see also Defs. Memo, at 14).[16]   Defendants do
not cite any case law in support of this specific argument.[17]

_____

[16]Defendants do not challenge that plaintiff has
sufficiently alleged that he and female stenographers, including
Zohar, were subject to the same workplace standards.  In any
event, plaintiff's allegations that all grand jury stenographers
were subject to the same standards (Compl. ¶¶ 13, 141-42), which
are supported by the workplace standards outlined in DANY's EEO
Policy and the 2009 DANY Office Support Staff Manual, both of
which plaintiff attaches to the complaint (Compl., Exs. 2-3), are
sufficient to establish that plaintiff and female stenographers
were subject to the same workplace standards.  See Aly v. N.Y.
Health & Hosp. Corp., No. 14-CV-03964 CBA MDG, 2015 WL 5604061,
at *4 (E.D.N.Y. Sept. 4, 2015) (Report & Recommendation) (holding
that coworkers who held different positions than plaintiff were
comparators because the coworkers and plaintiff either were
subject to the same workplace policies or had the same human
resources manager), adopted at, 2015 WL 5604065 (E.D.N.Y. Sept.
23, 2015); see also Brown v. Daikin Am. Inc., supra, 756 F.3d at
230 (finding that plaintiff had sufficiently pled that three
Japanese employees that rotated between Japan and the United
States were similarly situated to plaintiff, an American employee
based solely in the United States, where plaintiff and the
Japanese employees were in the same "New Business Development
Group" and where plaintiff and two of the Japanese employees had
the same supervisor); McGuinness v. Lincoln Hall, 263 F.3d 49, 54
(2d Cir. 2001) (employees in "positions of roughly equivalent
rank" were similarly situated).

[17]Indeed, the only cases defendants cite to support their
general argument that plaintiff has not sufficiently identified a
comparator are Whitfield-Ortiz v. Dep't of Educ. of City of N.Y.,
116 A.D.3d 580, 581, 984 N.Y.S.2d 327 (1st Dep't 2014), and
Hernandez v. City of New York, No. 11-CV-3521 SJ RER, 2013 WL
593450 at *4 (E.D.N.Y. Feb. 13, 2013).  Both cases are
distinguishable from the allegations made here and, therefore, do
not lend support to defendants' arguments.  For instance, in
Whitfield-Ortiz, the First Department of the New York Appellate
Division stated, in a conclusory fashion, that the plaintiff's
complaint did not "contain any factual allegations demonstrating
that similarly situated individuals who did not share plaintiff's
protected characteristics were treated more favorably than
                                              (continued...)

Defendants are correct with respect to the conduct of female grand jury stenographers other than Zohar; plaintiff does not allege that any female grand jury stenographer besides Zohar ever initiated an EEO complaint or was the subject of an EEO complaint.  But defendants' argument fails as to Zohar.

As alleged in the complaint, Zohar made an EEO complaint to defendants regarding sexual harassment by plaintiff on October 7, 2014 (Compl. ¶¶ 32-35).  Similarly, plaintiff alleges that he met with defendants on November 7, 2014 to "ma[k]e defendants aware of . . . Zohar's conduct" in calling him a stalker (Compl. ¶¶ 65-73).  Moreover, while plaintiff does not expressly allege that his November 7, 2014 complaint was for sexual harassment, as Zohar's earlier complaint was, plaintiff does allege that he believed that Zohar's complaint against him was "because of plaintiff's gender" and he describes himself, in the context of the November 7, 2014 meeting with defendants, as a

---

[17](...continued)
plaintiff."  Whitfield-Ortiz v. Dep't of Educ. of City of N.Y., supra, 116 A.D.3d at 581.  In Hernandez, the plaintiff "provide[d] examples with little details about the [job positions of the comparators], the underlying facts of the [conduct at issue] and the . . . treatment of the comparators."  Hernandez v. City of New York, supra, 2013 WL 593450 at *5.  Here, in contrast, the complaint contains sufficient facts to establish that Zohar was subject to the same workplace rules as plaintiff, that plaintiff and Zohar engaged in comparable conduct, and that plaintiff and Zohar were treated differently when engaging in that conduct.

"complainant" (Compl. ¶¶ 44, 93). Further, DANY's EEO policy, which plaintiff attaches to the complaint, states that "[a]ny employee . . . who believes that he or she may have been discriminated against because of . . . gender . . . may file an internal complaint" (Compl., Ex. 3, at 7). Accordingly, plaintiff has alleged that his November 7 conversation -- like Zohar's initial complaint -- was related to reporting harassing behavior by a coworker that the complainant believed was gender-based and that, in response to his complaint, defendants treated plaintiff differently than they had treated Zohar after she made her complaint (Compl. ¶¶ 102-03, 112-13, 152).

By these allegations, plaintiff has sufficiently alleged that he and Zohar engaged in "comparable conduct" such that the less receptive treatment plaintiff received from defendants raises an inference of discrimination. Graham v. Long Island R.R., supra, 230 F.3d at 40; see also Brown v. Daikin Am. Inc., supra, 756 F.3d at 230 ("[W]hether two employees are similarly situated . . . presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." (quotation marks and citations omitted)); Temple v. City of New York, No. 06-CV-2162 RRM CLP, 2010 WL 3824116 at *8 (E.D.N.Y. Sept. 23, 2010) ("[F]actual issues concerning comparable conduct . . . are appropriately resolved by a jury.").

Accordingly, I respectfully recommend that defendants' motion to dismiss plaintiff's NYCHRL discrimination claims be denied.

### c.   Retaliation under the NYSHRL

The analysis under the NYSHRL mirrors the Title VII analysis, Brown v. Daikin Am., Inc., supra, 756 F.3d at 226 n.7, except that the NYSHRL permits individual liability.  Williams v. Metro-North Commuter R. Co., 11 Civ. 7835 (CM), 2012 WL 2367049 at *13 (S.D.N.Y. June 20, 2012) (McMahon, D.J.).  Accordingly, I respectfully recommend that defendants' motion to dismiss plaintiff's NYSHRL retaliation claims be denied for the same reasons as plaintiff's Title VII and Section 1983 retaliation claims.

### d.   Retaliation under the NYCHRL

Because I conclude that "plaintiff['s retaliation] claims survive [a motion to dismiss] under Title VII and the NYSHRL, it is assumed that those claims also satisfy the NYCHRL standard." Adams v. City of New York, 837 F. Supp. 2d 108, 127 (E.D.N.Y. 2011).  Further, "the NYCHRL -- like the NYSHRL, but unlike Title VII -- allows for individual liability." Williams v. Metro-North Commuter R. Co., supra, 2012 WL 2367049 at *13.

Accordingly, I respectfully recommend that defendants' motion to dismiss plaintiff's NYCHRL retaliation claims be denied.

### e.   Remaining State Law Claims

In addition to his federal and state statutory claims, plaintiff also brings three claims against defendants that he captions as "State Torts" (Compl., Count Five).  Specifically, plaintiff alleges that (1) "defendants have committed ultra vires acts under color of law"; (2) "defendants have committed the tort [of] intentional infliction of emotional distress" and (3) "defendants have committed the tort [of] negligent infliction of emotional distress" (Compl. ¶¶ 171-73).  For the reasons set forth below, I conclude that each of these claims should be dismissed.

### i.   Ultra Vires Acts

Defendants argue that plaintiff's claim that defendants are liable for "ultra vires acts committed under the color of law" should be dismissed because the plaintiff has failed to allege any unauthorized acts by defendants that would support such a claim (Defs. Memo, at 18).[18]

---

[18]Defendants also argue that plaintiff's "ultra vires"
(continued...)

Defendants are correct.  Plaintiff's ultra vires claim states, in its entirety:  "Pursuant to all facts and circum- stances, plaintiff claims defendants have committed ultra vires acts under color of law" (Compl. ¶ 171).   The complaint also alleges that defendants' "ultra vires acts under color of law" form the basis of plaintiff's NYSHRL and NYCHRL claims (Compl. ¶ 170).  Plaintiff's opposition papers similarly concede that the "ultra vires acts alleged are the actions of defendants wherein they utilized the various civil rights laws and laws against discrimination to discriminate and retaliate against plaintiff" (Pl. Opp. Memo, at 14).  Therefore, any claims plaintiff may have against defendants for ultra vires acts are duplicative of plaintiff's statutory claims, and should be dismissed for that reason.  See Leder v. Am. Traffic Solutions, Inc., 81 F. Supp. 3d 211, 227 (E.D.N.Y. 2015) (dismissing a New York unjust enrichment claim because it was duplicative of a Section 1983 claim).

---

[18] (...continued)
claims should be dismissed because such claims should have been brought pursuant to Article 78 of the New York Civil Practice Laws and Rules, are subject to a four-month statute of limitations and, therefore, are time-barred (Defs. Memo, at 18). However, defendants do not cite to any case law in support of this argument.  Because I conclude for alternative reasons that plaintiff's ultra vires claim should be dismissed, I do not address defendants' Article 78 argument.

Accordingly, I respectfully recommend that plaintiff's "ultra vires" claims be dismissed.

### ii.   Intentional Infliction of Emotional Distress

Under New York law, the elements of a claim for intentional infliction of emotional distress are "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." See Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996).  "New York sets a particularly high bar for conduct that is so 'extreme and outrageous' that is actionable under this tort." Sharabura v. Taylor, No. 003 CV 1866 (JG), 2003 WL 22170601 at *4 (E.D.N.Y. Sept. 16, 2003), citing Murphy v. Am. Home Prod. Corp., 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (1983) ("so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").  Further, "[i]t is particularly difficult to withstand a motion to dismiss claims for intentional infliction of emotional distress in the employment law context." Lydeatte v. Bronx Overall Econ. Dev. Corp.,

00 Civ. 5433 (GBD), 2001 WL 180055 at *2 (S.D.N.Y. Feb. 22, 2001) (Daniels, D.J.).

Here, plaintiff's intentional infliction of emotional distress claim is based on the same conduct that gives rise to his discrimination claims (Pl. Opp. Memo, at 14). Courts applying New York law have dismissed claims for intentional infliction of emotional distress where the conduct at issue was similar in nature. See e.g., Spence v. Md. Cas. Co., 995 F.2d 1147, 1158 (2d Cir. 1993) ("Defendants' criticisms of Spence's job performance and their conditional threats of termination prior to May 1988 fall far short of the 'extreme' and 'outrageous' conduct that is actionable as an intentional infliction of emotional distress."); Sharabura v. Taylor, supra, 2003 WL 22170601 at *4 ("Sharabura asserts that her employer criticized her unfairly, gave her undesirable assignments and ultimately terminated her. As a matter of law, those alleged actions do not meet New York's high threshold for conduct that is actionable under the tort of intentional infliction of emotional distress."); Lydeatte v. Bronx Overall Econ. Dev. Corp., supra, 2001 WL 180055 at *2 (dismissing an intentional infliction of emotional distress claim where the plaintiff alleged racial harassment, discrimination and wrongful termination because "the behavior alleged . . . even if done maliciously, simply fails to measure up to what is require

56

to establish this claim").  Accordingly, I recommend that plaintiff's intentional infliction of emotional distress claims be dismissed for failure to state a claim.[19]

### iii.  Negligent Infliction of Emotional Distress

"Under New York State law, a plaintiff may maintain a claim for negligent infliction of emotional [di]stress under either of two theories -- the 'bystander' theory or the 'direct duty' theory."  Ibraheem v. Wackenhut Servs., Inc., 29 F. Supp. 3d 196, 215 (E.D.N.Y. 2014).  Both theories require a threat of physical harm to the plaintiff to be cognizable.  Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (stating that the bystander theory requires that the plaintiff "is threatened with physical harm as a result of defendant's negligence" and that the "direct duty" theory requires that the "defendant[] breach . . . a duty which unreasonably endangered [the plaintiff's] own physical safety" (citations omitted)).

---

[19]To the extent plaintiff asserts his claim for intentional infliction of emotional distress against DANY and the City, the claim should be dismissed for the additional reason that "public policy bars intentional infliction of emotional distress claims against government entities."  T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist., 11 Civ. 5133 (VB), 2012 WL 5992748 at *7 (S.D.N.Y. Nov. 27, 2012) (Bricetti, D.J.) (citations omitted).

Here, plaintiff has not alleged that defendants owed
him any duty separate from their general obligations as an
employer which, as a matter of law, cannot form the basis of a
negligent infliction of emotional distress claim.  See Alexander
v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 112
(E.D.N.Y. 2011) ("[A]n employer does not owe a special duty to an
individual employee, because it has an obligation to treat all
employees in the same manner."), citing Cucchi v. New York City
Off-Track Betting Corp., 818 F. Supp. 647, 656 (S.D.N.Y. 1993)
(Conboy, D.J.).  Nor does the complaint contain any allegations
that support the inference that plaintiff was threatened with
physical harm by defendants at any time.  Accordingly, I recom-
mend that plaintiff's negligent infliction of emotional distress
claim be dismissed.

IV.  Conclusion

For all the foregoing reasons, I respectfully recommend
that defendants' motion to dismiss be granted as to the following
claims:  (1) plaintiff's discrimination claims under Title VII,
Section 1983 and the NYSHRL; (2) plaintiff's Title VII retalia-
tion claims against Argyros and Savur; (3) plaintiff's Section
1983 retaliation claims against the City, DANY and Argyros and
Savur in their official capacities and (4) plaintiff's "state

58

tort" claims for "ultra vires" acts, intentional infliction of
emotional distress and negligent infliction of emotional dis-
tress.  I further recommend that defendants' motion to dismiss be
denied as to:  (1) plaintiff's Title VII retaliation claims
against DANY and the City; (2) plaintiff's Section 1983 retalia-
tion claims against Argyros and Savur in their individual capaci-
ties; (3) plaintiff's discrimination claims under the NYCHRL and
(4) plaintiff's NYSHRL and NYCHRL retaliation claims against all
defendants.

V.  Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
George B. Daniels, United States District Judge, 40 Foley Square,
Room 1350, New York, New York 10007, and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing objec-
tions must be directed to Judge Daniels.  FAILURE TO OBJECT
WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS

AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140,

155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d

Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049,

1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983)

(per curiam).

Dated:   New York, New York
         November 30, 2015

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge



Copies mailed to:

Mr. Christopher Day
423 Guyon Avenue
Staten Island, New York  10306

Zachary W. Carter, Esq.
Mario Frangiose, Esq.
Michael F. Fleming, Esq.
Corporation Counsel for the City of New York
Room 2-122
100 Church Street
New York, New York  10007


                        60