**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER DAY,

                         Plaintiff,

             -against-

THE CITY OF NEW YORK, THE NEW YORK
COUNTY DISTRICT ATTORNEYS OFFICE,
GEORGE ARGYROS, *in an official capacity and*
*individually*, NITIN SAVUR, *in an official capacity*
*and individually*,

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM DECISION AND ORDER

15-cv-04399 (GBD) (HBP)



GEORGE B. DANIELS, District Judge:

On or around June 8, 2015, *pro se* Plaintiff Christopher Day filed the above-captioned employment discrimination and retaliation action against the City of New York ("City"), the New York County District Attorney's Office ("DANY"), and George Argyros and Nitin Savur ("Individual Defendants," collectively with the City and DANY, "Defendants"), in both their individual and official capacities. (Complaint, (ECF No. 1).) Day alleges causes of action for gender discrimination and retaliation under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, (2) Section 1983, 42 U.S.C. § 1983, (3) the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, and (4) the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, *et seq.*. (*Id.* at ¶¶ 146-70). He also alleges causes of action for several state law torts, namely ultra vires acts, intentional infliction of emotional distress, and negligent infliction of emotional distress. (*Id.* at ¶¶ 171-76.)

This Court referred this action to Magistrate Judge Pitman. (Order of Reference to a Magistrate Judge, (ECF No. 3).) The Defendants then filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defendant's Notice of Motion to Dismiss the Complaint, (ECF No.

14).)  Magistrate Judge Pitman reviewed the motion and issued a Report and Recommendation ("R&R" or "Report") recommending that this Court grant Defendants' motion to dismiss with respect to Plaintiff's: (1) Title VII, Section 1983, and NYSHRL discrimination claims; (2) Title VII retaliation claims against the Individual Defendants; (3) Section 1983 retaliation claims against the City, DANY, and the Individual Defendants in their official capacities; and (4) state law tort claims.  (R&R, (ECF No. 20), at 58-59.) Magistrate Judge Pitman further recommended that this Court deny the Defendants' motion to dismiss with respect to Plaintiff's: (1) NYCHRL discrimination claims; (2) Title VII retaliation claims against DANY and the City; (3) Section 1983 retaliation claims against the Individual Defendants in their individual capacities; and (4) NYSHRL and NYCHRL retaliation claims against all defendants.  (*Id.* at 59.)

Plaintiff and Defendants both timely objected to the Report.  (Plaintiff's Objections to the Magistrate's November 30, 2015 Report ("Pl.'s Objs."), (ECF No. 21); Defendants' Objections to the Report and Recommendation, Dated November 30, 2015 and Response to Plaintiff's "Objections to the Magistrate's November 30, 2015 Report" ("Ds.' Objs."), (ECF No. 22); *see* Plaintiff's Response to Defendants' Objections to the Report and Recommendation Dated November 30, 2015, (ECF No. 22).)

## I.    STANDARD OF REVIEW

Courts "may accept, reject, or modify, in whole or in part, the findings and recommendations" set forth within a magistrate judge's report.  28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(3).  Courts must review *de novo* the portions of a magistrate judge's report to which a party properly objects.  28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3).  Portions of a magistrate judge's report to which no or merely perfunctory objections have been made are reviewed for clear error.  *See Edwards v. Fischer,* 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006).  Clear error is present only when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."  *Brown v.*

*Cunningham*, 2015 WL 3536615, at *4 (S.D.N.Y. June 4, 2015) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir.2006)).

## II.   BACKGROUND FACTS

The Report sets forth the Complaint's factual allegations in significant detail.  Christopher Day is a man that began working as a temporary grand jury stenographer for DANY on or around June 23, 2014. (Complaint at ¶¶ 1, 7.)  The stenographer unit in which Day worked employed approximately twenty females and one male besides Day.  (*Id.* at ¶ 10.)  The employees in the unit frequently joked with each other and discussed topics that touched on "sexual/risqué/political/religious content."  (*Id.* at ¶ 19.)  For instance, on one occasion a female coworker slapped another female coworker on her buttocks.  (*Id.*)

According to the Complaint, on or around October 7, 2014, a female coworker lodged an Equal Employment Opportunity ("EEO") complaint with Defendant Argyros (DANY's EEO Coordinator), Defendant Savur (DANY's EEO Officer), and two of Plaintiff's supervisors, alleging that he had sexually harassed her by showing her "an internet joke or meme" on his cell phone which made her feel "uncomfortable, unsafe, or offended."  (*Id.* at ¶¶ 32-35.)  The Individual Defendants notified Plaintiff of the allegation on October 17, 2014.  (*Id.* at ¶ 39; R&R at 4 & n.2.)

On October 30, 2014, the Defendants determined that Plaintiff had not violated any EEO policies. (Complaint at ¶¶ 43, 49.)  The Defendants advised Plaintiff to avoid discussing the accuser's complaint with his coworkers; Plaintiff alleges that a similar instruction was not provided to his accuser.  (*Id.* at ¶¶ 53-54.)

On November 5, 2014, Plaintiff's accuser allegedly made several "malicious, slanderous" statements about Plaintiff to coworkers, including that Plaintiff was a "stalker," and that he had "encroached on [her] life."  (*Id.* at ¶¶ 65-67.)  Plaintiff also alleges that she "associated [his] name with rape culture."  (*Id.* at ¶ 68.)  On November 7, 2014, Plaintiff informed the Individual Defendants of the statements that she had made.  (*Id.* at ¶ 69.)  He stated that he believed her EEO complaint had been made

3

in "bad faith" because she had lodged the complaint only after finding out that Day had recently begun a committed relationship with another woman.  (*Id.* at ¶¶ 70-71.)   Plaintiff alleges that in response, Individual Defendants created a "separate set of rules" for Plaintiff, telling him (1) that he should not discuss relationships in the workplace; (2) coworker friendships ended when he came into work; (3) he should act as if his actions would end up in a newspaper; (4) sometimes when a worker's personality does not fit with a particular office culture, the best option for the worker might be to find another job; (5) office humor can be risky; (6) Plaintiff should avoid conversations about his accuser; (7) he should not retaliate against her; and (8) he should be respectful to her.  (*Id.* at ¶¶ 75-76, 78-80, 82-87.)   Plaintiff alleges that although the Individual Defendants told him that these rules applied to all employees, in reality, female employees were not subject to such rules.  (*Id.* at ¶ 75.)

On December 19, 2014, Plaintiff again complained to Defendants, alleging that his accuser had continued "to antagonize . . . [him] and create an atmosphere of awkwardness and hostility."  (*Id.* at ¶ 96.) Day told the Individual Defendants that he was concerned about their "investigatory neutrality," expressed his belief that "he was on a different set of rules from female coworkers," and told them that "he did not feel equal to coworkers."  (*Id.* at ¶¶ 98-99.)   According to the Complaint, the Individual Defendants responded with hostility, calling him "dumb," "delusional," and "oversensitive."  (*Id.* at ¶ 102.)

On February 2, 2015, Plaintiff's employment was terminated.  (*Id.* at ¶ 117.)   Day alleges the reason for his termination was his opposition to Defendants' "unlawful employment practices."  (*Id.* at ¶¶ 122-25.)

## III.    DISCRIMINATION CLAIMS

Magistrate Judge Pitman recommended that this Court dismiss Day's discrimination claims under Title VII, Section 1983, and the NYSHRL because he failed to allege an adverse employment action. (R&R at 18-26, 40.)   Conversely, he advised this Court to deny the Defendants' motion to dismiss Day's NYCHRL discrimination claim, which does not require a plaintiff to plead or prove an adverse

4

employment action to prevail.  (R&R at 40-48.)  Plaintiff objected to the recommendation to dismiss his Title VII, Section 1983 and NYSHRL discrimination claims.  Defendants objected to the recommendation not to dismiss Day's NYCHRL discrimination claim.

## A.  Title VII, Section 1983, and NYSHRL Discrimination Claims

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff alleging Title VII sex discrimination must "plausibly allege that (1) the employer took adverse action against him, and (2) his . . . sex . . . was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  The Second Circuit has held that the adverse action must "materially . . . change . . . the terms and conditions' of [plaintiff's] employment," which means a "mere inconvenience or an alteration of job responsibilities" do not suffice. *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

Magistrate Judge Pitman concluded that neither Defendants' initial investigation of the complaint against Plaintiff, nor the isolated incidents of name calling materially changed the "terms or conditions'" of his employment, and therefore failed to satisfy the material-adverse-action pleading element. (*See* R&R at 19-20, 24-26.)  Plaintiff does not object to these portions of Magistrate Judge Pitman's report. Magistrate Judge Pitman's conclusions are not clearly erroneous, and therefore this Court adopts those portions of the Report in their entirety.

Magistrate Judge Pitman also concluded that the alleged imposition of a "separate set of rules" on Plaintiff did not constitute a materially adverse employment action because, at best, they amounted to monitoring Plaintiff more closely than his coworkers. (R&R at 20-22.)  Plaintiff objects to this conclusion, arguing that *Walker v. New York City Department of Corrections* supports the proposition that a plaintiff who demonstrates that standards of workplace conduct have been applied differently to males and females has sufficiently pleaded a cognizable claim under Title VII. (Pls. Objs. at 1-2 (citing *Walker v. New York City Department of Corrections*, *99 No. 01 Civ. 1116 (LLM), 2008 WL 4974425, at *15-16 (S.D.N.Y.

5

Nov. 19, 2008)).) *Walker*, however, is inapposite because the court's holding applied only to the second element—that an adverse employment action was motivated by discrimination—and not to the first element: the establishment of an adverse employment action in the first instance. 2008 WL 4974425, at *13, 15 (comparing, *inter alia*, approximately one-month suspension without pay, which defendants conceded was an adverse employment action, imposed on female with discipline received by male coworker for similar misconduct to determine whether adverse employment action was motivated by discrimination).

This Court agrees with Magistrate Judge Pitman that the imposition of the rules described in the Complaint resulted in, at most, Plaintiff being more closely monitored than his coworkers. More closely monitoring an employee, however, does not constitute an adverse employment action, the first element which must be pled to survive a Rule 12(b)(6) motion to dismiss. (*See* R&R at 21-22 (citing cases standing for this proposition).) This Court therefore adopts the Report's conclusion that the separate set of rules imposed on Plaintiff are insufficient to support the materially adverse-employment-action element.

Finally, Magistrate Judge Pitman concluded that Plaintiff's allegation that the Defendants investigated his accuser's EEO complaint against him more thoroughly than his EEO complaint against her does not constitute an adverse employment action. As Magistrate Judge Pitman noted in his Report, the Second Circuit held in *Fincher v. Depository Trust & Clearing Corp.* that the complete failure to investigate a complaint of discrimination does not qualify as an adverse employment action for the purposes of a Title VII retaliation claim; nor does it contribute to a hostile work environment for a sexual harassment claim. (R&R at 22 (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010).) Several district courts have extended this holding to Title VII discrimination claims. (*Id.* at 23 (citing district court cases).)

Plaintiff objects, citing *Valenti v. Massapequa Union Free School District* for the proposition that an employer's failure to investigate and redress a complaint brought by a male employee when the

employer has done so for complaints brought by female employees can constitute unlawful sex discrimination under Title VII. (Pl.'s Objs. at 1 (citing *Valenti*, No. 09-cv-977 (JFB) (MLO), 2010 WL 475203 (E.D.N.Y. Feb. 5, 2010).) Magistrate Judge Pitman distinguished *Valenti* in two meaningful ways. First, he observed that it preceded the Second Circuit's holding that the failure to investigate a complaint of discrimination does not qualify as an adverse employment action for the purposes of a Title VII retaliation claim, and therefore, the case's progeny extending that holding to Title VII discrimination claims. Second, Magistrate Judge Pitman noted that *Valenti*, in support of its holding, cited court opinions focused on whether disparate treatment of similarly situated employees gave rise to an inference of discrimination, not on whether the failure to perform an identical investigation constituted an adverse employment action in and of itself. This Court adopts Magistrate Judge Pitman's analysis and conclusion that Plaintiff has failed to plead an adverse employment action, and thus, has failed to plead a Title VII claim for discrimination upon which relief can be granted.

Magistrate Judge Pitman also recommended that Plaintiff's Section 1983 and NYSHRL discrimination claims be dismissed on the same basis. Plaintiff reiterates the objections he made to the dismissal of his Title VII discrimination claim. For the same reasons that this Court overrules his objections to the dismissal of his Title VII discrimination claims, this Court also overrules his objections to the dismissals of his Section 1983 and NYSHRL discrimination claims.

### B. Leave to Amend

In the alternative, Plaintiff requests leave to amend so that he can remedy the Complaint's pleading deficiencies with regard to his Title VII, Section 1983 and NYSHRL discrimination claims. (Pl.'s Objs. at 2.) Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely grant leave to amend when justice so requires. "A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citation, internal

7

quotation marks and brackets omitted).  On the other hand, "[l]eave to amend may properly be denied if the amendment would be futile."  *Id.* (citation and internal quotation marks omitted).  There is no indication that Day suffered a materially adverse employment action, even when construing the Complaint liberally, and so any amendment would be futile.  Thus, Plaintiff's alternative request for leave to amend the Complaint is denied.

### C.  NYCHRL Discrimination Claim

Although Magistrate Judge Pitman recommended dismissing Day's Title VII and NYSHRL discrimination claims, he recommended denying Defendants' motion to dismiss Plaintiff's NYCHRL discrimination claim.  The Defendants object to this recommendation.

As Magistrate Judge Pitman noted, "unlike Title VII of the NYSHRL, 'the NYCHRL does not require materially adverse employment actions.'"  (R&R at 42 (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013) (alteration omitted)).)  "To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that []he has been treated less well than other employees because of h[is] gender."  *Id.* at 110 (citation and internal quotation marks omitted).

Magistrate Judge Pitman determined that Plaintiff had alleged four ways in which he was treated "less well" than his female coworkers: (1) Defendants did not receive or adequately investigate Plaintiff's complaint while his accuser's complaint was received and adequately investigated; (2) after Plaintiff had complained about his accuser, Defendants told Plaintiff to treat his accuser respectfully, but did not tell her to treat Plaintiff respectfully; (3) Defendants challenged Plaintiff's mental state, but did not challenge his accuser's mental state; and (4) Defendants directed hostile language at Plaintiff, but never directed such language to a female complainant.  (R&R at 43-44.)

Primarily with regard to the first two reasons provided in the Report, Defendants argue that the Complaint's allegations do not support an inference that Plaintiff's complaint was treated in a significantly

8

distinguishable manner from his accuser's complaint against him. (Ds.' Objs. at 11-14.) For instance, the Complaint states that Plaintiff was interviewed by Defendants as part of the investigation into his accuser's complaint, but also states that Defendants spoke with Plaintiff's accuser after Plaintiff had complained about her. (*Id.* at 12.) Furthermore, Defendants argue that the Complaint alleges that Plaintiff's accuser was given special seating and scheduling privileges in response to her complaint, and, similarly, Plaintiff was offered a transfer in response to his December 19, 2014 complaint. (*Id.* at 12-13.)

Defendants' argument misses the mark. First, a transfer is a very different type of "remedy" than the provision of special seating and scheduling privileges. The former imposes a burden on the complainant—*i.e.*, a disruption to the complainant's work schedule and location—whereas the latter remedy affords a benefit to the complainant—*i.e.*, a more favorable work schedule and location of work.

Second, a transfer carries a stigma that being afforded special seating and scheduling privileges does not. Plaintiff alleges that the special seating and scheduling privileges provided to Plaintiff's accuser allegedly continued even after DANY determined that Plaintiff had not violated EEO policies. Plaintiff alleges that this treatment adversely affected the terms and conditions of his employment by supporting the notion that he had done something wrong. Thus, not only was Plaintiff treated "less well" due to the substantive differences between being offered special seating and scheduling privileges as opposed to a transfer, but also the inferences that coworkers allegedly drew from this disparate treatment.

Third, Plaintiff's accuser was afforded special seating and scheduling privileges after she had made her initial complaint. Defendant was not offered any "similar" remedy until more than a month after his initial complaint, and only after complaining for a second time. Thus, contrary to Defendants' suggestion, the Complaint has adequately alleged that the way in which Defendants received Plaintiff's EEO complaint versus his accuser's sufficiently alleges that Plaintiff was treated "less well."

Moreover, the Defendants have not objected to the Report's determination that Defendants' challenges to Plaintiff's mental state, but not to his accuser's, qualifies as being treated "less well." (*See*

R&R at 45 (citing *Forgione v. City of New York*, No. 11-cv-5248, 2012 WL 4049832, at *6 (E.D.N.Y.
Sept. 13, 2012) (holding that allegations that defendants twice referred plaintiff for psychological
evaluation sufficient to allege an adverse action)).) Instead, Defendants argue that Plaintiff's observation
of his accuser after making her EEO complaint is an insufficient basis for his allegation that Defendants
did not recommend that Plaintiff's accuser also seek psychiatric treatment. (Ds.' Objs. at 13.) Defendants,
however, do not provide any case law to support this argument. As the Report pointed out, a motion to
dismiss is not the appropriate stage of the litigation to address factual disputes. (*See* R&R at 45, n.15.) If
Defendants in fact did not question Plaintiff's accuser's mental state, and this disparate treatment was
motivated by discriminatory intent, Plaintiff arguably will have made out his NYCHRL claim.
Accordingly, he has plausibly pleaded this claim to survive this motion to dismiss.

Defendants also object on the grounds that Plaintiff has not adequately pleaded an inference of
discrimination. As the Report noted, Plaintiff can plead discriminatory animus by pleading differential
treatment. (R&R at 46 (quoting applicable case law).) Magistrate Judge Pitman concluded that Plaintiff
pleaded differential treatment by establishing that he and his accuser engaged in comparable conduct by
filing their respective EEO complaints, but that the Defendants responded to that comparable conduct
differently. (*Id.* at 50-52.)

Defendants argue that the Second Circuit has cautioned that "[a]n employer has latitude in deciding
how to handle and respond to discrimination claims, notwithstanding the fact that different strategies and
approaches in different cases and classes of cases will result in differences in treatment." (Ds.' Objs. at
13 (quoting *United States v. New York City Transit Auth.*, 97 F.3d 672, 677 (2d Cir. 1996)).) Thus,
Defendants appear to argue that the basis identified by Magistrate Judge Pitman to establish differential
treatment is inadequate as a matter of law. The case cited by Defendants, however, is inapposite for two
reasons. First, the case addressed differences in the manner an employer defended itself against lawsuits
alleging Title VII discrimination and retaliation claims, not the manner in which it addresses internal EEO

complaints levied against another employee. *See NYC Transit Auth.*, 97 F.3d at 677. Second, the court's analysis was directed at the material-adverse-employment-action element necessary to make out a Title VII retaliation claim, not the lesser standard that must be pleaded with regard to an NYCHRL discrimination claim. *See id.*

This Court has reviewed Magistrate Judge Pitman's analysis and conclusion, and likewise concludes that the Plaintiff has adequately pleaded differential treatment sufficient to show an inference of discrimination. (*See* R&R at 46-52.)

## IV.    RETALIATION CLAIMS

Magistrate Judge Pitman also recommended that this Court deny the Defendants' motion to dismiss Plaintiff's retaliation claims (with the exception of his Title VII retaliation claim against the Individual Defendants). (R&R at 28-39.)

Magistrate Judge Pitman concluded that Plaintiff was engaged in protected activity when in meetings on November 7 and December 19, 2014, respectively, he raised concerns that the Defendants were treating his female accuser differently than they would have treated him had the situation been reversed, and when he told Defendants that he was being subjected to a different set of rules than female coworkers, did not feel equal to coworkers, and was concerned about the Defendants' investigative neutrality. (R&R at 13-14.)

Defendants object to this conclusion on several grounds. First, they argue that Plaintiff's conversations with the Defendants on November 7 and December 19, 2014, were merely a continuation of the Defendants' initial investigation into his accuser's complaint, and that an employee that is the subject of an EEO complaint cannot be said to have engaged in protected activity simply by speaking with an employer's EEO officer with regard to that complaint. This argument is belied by the allegation that DANY had concluded its investigation of the other sexual harassment complaint by October 30, 2014 when it informed Plaintiff that he had not violated any EEO policy. Thus, the only reasonable conclusion

11

to draw is that the November 7 and December 19, 2014, conversations, which were initiated by Plaintiff, took place to address his separate complaints.

Defendants also contend that Plaintiff did not have a "good faith, reasonable belief" that the conversations pertained to unlawful gender discrimination because the Complaint states that he did not believe that the stenography pool's horseplay constituted an EEO violation, and because his accuser's motivations and comments were gender-neutral. However, Defendants overlook Plaintiff's complaint that he and the other male employee were subject to different workplace behavior standards and rules. This Court agrees with Magistrate Judge Pitman that Plaintiff could have maintained a good faith, reasonable belief that this disparate treatment constituted gender discrimination, and that by complaining about such disparate treatment, he had engaged in protected activity.

Finally, Defendants argue that Plaintiff failed to plausibly plead that the Defendants understood or could reasonably have understood that Plaintiff's complaint was directed at conduct prohibited by Title VII. As Magistrate Judge Pitman explained, Plaintiff complained to the Defendants that he "did not feel equal to female employees" and that he "was on a different set of rules from female employees." (R&R at 35 (citing Complaint at ¶¶ 98-99).) This Court agrees that these statements related to disparate treatment were sufficient to put the Defendants on notice that Plaintiff was alleging gender discrimination. Accordingly, Defendants' objections are overruled.

## V.    STATE LAW TORT CLAIMS

Neither party objected to Magistrate Judge Pitman's recommendation to dismiss Plaintiff's state law tort claims for ultra vires acts, intentional infliction of emotional distress, and negligent infliction of emotional distress. This Court has reviewed the Report's findings and conclusions related to these claims for clear error. Finding none, it adopts the Report's findings and conclusions with respect to Plaintiff's state law claims in their entirety. Accordingly, these claims are dismissed.

## VI.    CONCLUSION

This Court agrees with all of the Report's ultimate recommendations, and therefore dismisses Plaintiff's: (1) Title VII, Section 1983, and NYSHRL discrimination claims; (2) Title VII retaliation claims against the Individual Defendants; (3) Section 1983 retaliation claims against the City, DANY, and the Individual Defendants in their official capacities; and (4) state law tort claims.   Furthermore, in accordance with the Report's recommendations, this Court denies the Defendants' motion to dismiss Day's: (1) NYCHRL discrimination claims; (2) Title VII retaliation claims against DANY and the City; (3) Section 1983 retaliation claims against the Individual Defendants in their individual capacities; and (4) NYSHRL and NYCHRL retaliation claims against all defendants.

The Clerk of Court is directed to close the motion docketed at ECF No. 14.


Dated: March 22, 2016
       New York, New York

                                        SO ORDERED.


                                        GEORGE B. DANIELS
                                        UNITED STATES DISTRICT JUDGE

13